UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| STATE OF MINNESOTA, by its Attorney General, Keith Ellison,<br><br>                    Plaintiff,<br><br>        v.<br><br>AMERICAN PETROLEUM INSTITUTE, EXXON MOBIL CORPORATION, EXXONMOBIL OIL CORPORATION, KOCH INDUSTRIES, INC., FLINT HILLS RESOURCES LP, FLINT HILLS PINE BEND,<br><br>                    Defendants. | Case No. 20-cv-1636-JRT-HB |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF
STATE OF MINNESOTA'S MOTION TO REMAND TO STATE COURT**

## TABLE OF CONTENTS

I.     **INTRODUCTION** ...................................................................... 1

II.     **FACTS** ......................................................................................... 3

III.    **LEGAL STANDARD** ............................................................... 4

IV.    **ARGUMENT** ............................................................................. 6

     A.     The State's claims do not fit within either narrow exception to the well-pleaded complaint rule................................................. 6

         1.    There is no jurisdiction under Grable because the Complaint does not "necessarily raise" any substantial, disputed federal questions. .................. 6

             a.    Nothing about this case "necessarily raise[s]" any federal issue............ 7

             b.    This case does not raise a "substantial" federal issue. ............................ 9

         2.    There is no "complete preemption" of the State's claims. ......................... 10

     B.     Federal common law does not confer subject-matter jurisdiction over the State's claims. ....................................................... 11

         1.    Federal common law cannot provide an independent basis for removal. ................................................................................. 13

         2.    This case has nothing to do with any body of federal common law. .......... 14

         3.    The federal common law Defendants point to is irrelevant to the State's claims. ....................................................... 15

     C.     The Complaint does not implicate federal enclaves, the OCS, or federal officers; jurisdiction on these bases is inappropriate. ....................................... 17

         1.    The State is not seeking to recover for injuries that occurred on federal enclaves............................................................. 17

         2.    The State's Complaint does not fall within the jurisdictional grant of the Outer Continental Shelf Lands Act. ....................................... 20

         3.    There is no federal officer removal jurisdiction because no federal officer directed the Defendants' actions at issue in this case. .................... 21

D.    The Class Action Fairness Act does not provide a basis for removal because this is not a "class action." ................................................................ 25

E.    Diversity jurisdiction cannot be premised on indirect benefits to Minnesota citizens because the State is the real party in interest. .................... 28

**V.    CONCLUSION ....................................................................................... 30**

# TABLE OF AUTHORITIES

**Cases**                                                   **Page(s)**

*Am. Elec. Power Co. v. Connecticut,*
   564 U.S. 410 (2011) ........................................................................... 12, 16

*Bd. of Cty. Comm'rs of Boulder Cty. v. Suncor Energy (U.S.A.) Inc.* ("*Boulder I*"),
   405 F. Supp. 3d 947 (D. Colo. 2019) ...................................................*passim*

*Bd. of Cty. Comm'rs of Boulder Cty. v. Suncor Energy (U.S.A.) Inc.* ("*Boulder II*"),
   965 F.3d 792 (10th Cir. 2020) ........................................................ 2, 22, 25

*Cascades Dev. of Minn., LLC v. Nat'l Specialty Ins.,*
   675 F.3d 1095 (8th Cir. 2012) ..................................................................... 28

*Caterpillar Inc. v. Williams,*
   482 U.S. 386 (1987) ...................................................................... 1, 5, 10, 11

*Cent. Iowa Power Co-op v. Midwest Indep. Transmission Sys. Operator, Inc.,*
   561 F.3d 904 (8th Cir. 2009) ..................................................................... 4, 7

*City of New York v. BP P.L.C.,*
   325 F. Supp. 3d 466 (S.D.N.Y. 2018) .......................................................... 13

*City of Oakland v. BP PLC* ("*Oakland*"),
   __ F.3d __, No. 18-16663, 2020 WL 4678380 (9th Cir. Aug. 12, 2020) ..............*passim*

*Coleman v. Trans Bay Cable, LLC,*
   No. 19-CV-02825-YGR, 2019 WL 3817822 (N.D. Cal. Aug. 14, 2019) ..................... 18

*Cty. of San Mateo v. Chevron Corp.* ("*San Mateo I*"),
   294 F. Supp. 3d 934 (N.D. Cal. 2018) ...................................................*passim*

*Cty. of San Mateo v. Chevron Corp.* ("*San Mateo II*"),
   960 F.3d 586 (9th Cir. 2020) ........................................................ 2, 22, 25

*Dahl v. R.J. Reynolds Tobacco Co.,*
   478 F.3d 965 (8th Cir. 2007) ........................................................................ 4

*Empire Healthchoice Assur., Inc. v. McVeigh,*
547 U.S. 677 (2006) ........................................................................ 6

*EP Operating Ltd. P'ship v. Placid Oil Co.,*
26 F.3d 563 (5th Cir. 1994) ........................................................... 20

*Exxon Mobil Corp. v. Allapattah Servs.,*
545 U.S. 546 (2005) ........................................................................ 4

*Faulk v. Owens-Corning Fiberglass Corp.,*
48 F. Supp. 2d 653 (E.D. Tex. 1999) ............................................. 24

*Franchise Tax Bd. v. Constr. Laborers Vacation Tr. for S. Cal.,*
463 U.S. 1 (1983) ..................................................................*passim*

*Gore v. Trans World Airlines,*
210 F.3d 944 (8th Cir. 2000) ........................................................... 5

*Goto v. Whelan,*
No. 20-CV-01114-HSG, 2020 WL 4590596 (N.D. Cal. Aug. 11, 2020) ...................... 18

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.,*
545 U.S. 308 (2005) ..............................................................*passim*

*Graves v. 3M Co.,*
No. CV 19-3094 (JRT/KMM), 2020 WL 1333135 (D. Minn. Mar. 23, 2020) ............. 25

*Great Lakes Gas Transmission Ltd. P'ship v. Essar Steel Minn. LLC,*
843 F.3d 325 (8th Cir. 2016) ........................................................... 6

*Gully v. First Nat'l Bank,*
299 U.S. 109 (1936) ...................................................................... 11

*Gunn v. Minton,*
568 U.S. 251 (2013) ........................................................................ 9

*In re Deepwater Horizon,*
745 F.3d 157 (5th Cir. 2014) ......................................................... 20

*In re Dicamba Herbicides Litig.,*
No. 1:18-CV-21-SNLJ, 2018 WL 2447792 (E.D. Mo. May 31, 2018) ....................... 9

*In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*,
    428 F. Supp. 2d 1014 (D. Minn. 2006) ........................................................................ 24

*In re MTBE Prods. Liab. Litig.*,
    488 F.3d 112 (2d Cir. 2007) ....................................................................................... 24

*Jacks v. Meridian Res. Co.*,
    701 F.3d 1224 (8th Cir. 2012) ................................................................................... 21

*Leslie v. Maida Eng'g Inc.*,
    No. 4:13-CV-614 CEJ, 2013 WL 2403849 (E.D. Mo. May 31, 2013) ...................... 17

*LG Display Co. v. Madigan*,
    665 F.3d 768 (7th Cir. 2011) ............................................................................... 26, 27

*Martin v. Franklin Capital Corp.*,
    546 U.S. 132 (2005) .................................................................................................. 30

*Martinson v. Mahube-Otwa Cmty. Action P'ship, Inc.*,
    371 F. Supp. 3d 568 (D. Minn. 2019) ......................................................................... 6

*Maryland v. Louisiana*,
    451 U.S. 725 (1981) .................................................................................................. 29

*Massachusetts v. Exxon Mobil Corp.*,
    __ F. Supp. 3d __, No. CV 19-12430-WGY, 2020 WL 2769681
    (D. Mass. May 28, 2020) .................................................................................. *passim*

*Mayor & City Council of Baltimore v. BP P.L.C.* ("*Baltimore I*"),
    388 F. Supp. 3d 538 (D. Md. 2019) ................................................................. *passim*

*Mayor & City Council of Baltimore v. BP P.L.C.* ("*Baltimore II*"),
    952 F.3d 452 ...................................................................................................... *passim*

*Meyers v. Chesterton*,
    No. CIV.A 15-292, 2015 WL 2452346 (E.D. La. May 20, 2015) ............................. 24

*Mississippi ex rel. Hood v. AU Optronics Corp.*,
    701 F.3d 796 (5th Cir. 2012) ..................................................................................... 26

*Moor v. Alameda Cty.*,
    411 U.S. 693 (1973) .................................................................................................. 28

*Native Village of Kivalina v. ExxonMobil Corp.*,
  696 F.3d 849 (9th Cir. 2012) .................................................................................. 16

*Nevada v. Bank of Am. Corp.*,
  672 F.3d 661 (9th Cir. 2012) ............................................................................ 28, 29

*New York v. Gutierrez*,
  No. 08-CV-2503-CPS-RLM, 2008 WL 5000493 (E.D.N.Y. Nov. 20, 2008) .............. 29

*Purdue Pharma L.P. v. Kentucky*,
  704 F.3d 208 (2d Cir. 2013) ............................................................................ 26, 27

*Rhode Island v. Chevron Corp.*,
  393 F. Supp. 3d 142 (D.R.I. 2019) .................................................................*passim*

*Rodriguez v. Fed. Deposit Ins. Corp.*,
  140 S. Ct. 713 (2020) .............................................................................................. 12

*Ryan v. Dow Chem. Co.*,
  781 F. Supp. 934 (E.D.N.Y. 1992) .......................................................................... 23

*State v. City of Dover*,
  891 A.2d 524 (N.H. 2006) ...................................................................................... 29

*Vaden v. Discover Bank*,
  556 U.S. 49 (2009) .................................................................................................... 5

*W. Va. ex rel. McGraw v. CVS Pharmacy, Inc.*,
  646 F.3d 169 (4th Cir. 2011) .................................................................................. 26

*Washington v. Cimei Innolux Corp.*,
  659 F.3d 842 (9th Cir. 2011) ............................................................................ 26, 28

*Washington v. Monsanto Co.*,
  274 F. Supp. 3d 1125 (W.D. Wash. 2017) .............................................................. 18

*Watson v. Philip Morris Cos.*,
  551 U.S. 142 (2007) .......................................................................................... 21, 25

*Williams v. Employers Mut. Cas. Co.*,
  845 F.3d 891 (8th Cir. 2017) .................................................................................. 26

*Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*,
    471 U.S. 626 (1985) ........................................................................................... 19

**Statutes**

28 U.S.C. § 1331 .............................................................................................. 6, 14

28 U.S.C. § 1332 ............................................................................................. *passim*

28 U.S.C. § 1442 ............................................................................................. *passim*

28 U.S.C. § 1447 ................................................................................................. 30

28 U.S.C. § 1453 .............................................................................................. 2, 26

43 U.S.C. § 1331 ................................................................................................... 2

43 U.S.C. § 1349 ................................................................................................. 20

Minn. Stat. § 8.31 ............................................................................................... 28

Minn. Stat. § 325D.44 .......................................................................................... 3

Minn. Stat. § 325F.67 ........................................................................................... 3

Minn. Stat. § 325F.69 ........................................................................................... 3

**Rules**

Federal Rules of Civil Procedure Rule 23 .................................................... 26, 27

## I.    INTRODUCTION

The State of Minnesota ("State") filed this action in state court, asserting state-law consumer-protection and failure-to-warn claims against Defendants. The State alleges that Defendants have known for decades about the direct link between fossil-fuel use and climate change, yet engaged in a coordinated effort to conceal that knowledge from the general public and consumers. Under the bedrock well-pleaded complaint rule, the State is "the master of [its] claim[s]," and the Complaint's "exclusive reliance on state law" precludes removal here. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). The Court should return the State's claims, brought under the laws of the State to protect the people of the State, to the courts of the State.

Five district courts and three appellate courts have rejected Defendants' attempts to remove substantially similar cases.[1] These cases considered and rejected six of the

---

[1] *See Mayor & City Council of Baltimore v. BP P.L.C.*, 388 F. Supp. 3d 538 (D. Md. 2019) ("*Baltimore I*") (granting motion to remand), *as amended* (June 20, 2019), *aff'd in part, appeal dismissed in part*, 952 F.3d 452 (4th Cir. 2020) ("*Baltimore II*"), *petition for cert. filed*, No. 19-1189 (Mar. 31, 2020); *Cty. of San Mateo v. Chevron Corp.*, 294 F. Supp. 3d 934, 937 (N.D. Cal. 2018) ("*San Mateo I*") (same), *aff'd in part, appeal dismissed in part*, 960 F.3d 586 (9th Cir. 2020) ("*San Mateo II*"), *reh'g en banc denied* (Aug. 4, 2020); *City of Oakland v. BP PLC*, __ F.3d __, No. 18-16663, 2020 WL 4678380 (9th Cir. Aug. 12, 2020) (vacating order denying motion to remand), *opinion amended and superseded on denial of reh'g sub nom.* __ F.3d __, 2020 WL 4678380 (Aug. 12, 2020) ("*Oakland*"); *Bd. of Cty. Comm'rs of Boulder Cty. v. Suncor Energy (U.S.A.) Inc.*, 405 F. Supp. 3d 947 (D. Colo. 2019) ("*Boulder I*") (granting motion to remand), *aff'd in part, appeal dismissed in part*, 965 F.3d 792 (10th Cir. 2020) ("*Boulder II*"); *Rhode Island v. Chevron Corp.*, 393 F. Supp. 3d 142 (D.R.I. 2019) (granting motion to remand), *appeal docketed*, No. 19-1818 (1st Cir. Aug. 20, 2019); *Massachusetts v. Exxon Mobil Corp.*, __ F. Supp. 3d __, No. CV 19-12430-WGY, 2020 WL 2769681 (D. Mass. May 28, 2020) (same).

seven grounds for removal Defendants assert here: (1) federal common law, (2) *Grable*[2] jurisdiction, (3) federal enclave jurisdiction, (4) the federal officer removal statute, 28 U.S.C. § 1442, (5) the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1331, *et seq.*, and (6) the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1453.[3] Defendants raise a seventh, equally meritless ground for removal here based on diversity jurisdiction, 28 U.S.C. § 1332.

Facing a unanimous tide of decisions rejecting federal jurisdiction in substantially similar cases, Defendants have tried to recast this case into one that finds no basis in the Complaint or in reality, and remove that one instead. Their Notice of Removal ("Not.") raises legal questions unrelated to the State's claims, imagines remedies far beyond those available or sought, insinuates lurid political improprieties, gesticulates toward wholly irrelevant matters of international diplomacy, and more. "Yet as it reaches this Court on a motion to remand, this case is about the well-pleaded complaint rule—nothing more and nothing less." *Massachusetts*, 2020 WL 2769681, at *1. The State's actual Complaint and controlling law, including decisions Defendants omitted from their Notice of Removal,

---

[2] *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005).

[3] *Baltimore I*, 388 F. Supp. 3d 538 (rejecting jurisdiction based on federal common law, *Grable*, complete preemption, federal enclave, OCSLA, federal officer, and bankruptcy); *San Mateo I*, 294 F. Supp. 3d 934 (same); *Boulder I*, 405 F. Supp. 3d 947 (same); *Rhode Island*, 393 F. Supp. 3d 142 (same); *Massachusetts*, 2020 WL 2769681 (rejecting jurisdiction based on federal common law, complete preemption, *Grable*, federal officer, and CAFA); *Baltimore II*, 952 F.3d 452 (affirming rejection of jurisdiction based on federal officer removal statute and dismissing appeal as to other grounds for removal); *San Mateo II*, 960 F.3d 586 (same); *Boulder II*, 965 F.3d 792 (same); *Oakland*, 2020 WL 4678380 (rejecting jurisdiction under federal common law, complete preemption, and *Grable*).

foreclose federal jurisdiction. Stripped of its hyperbole and factual misstatements, the Notice of Removal makes no arguments that courts around the country have not already rejected multiple times over.

Each of Defendants' seven bases for removal fails because the claims in the State's Complaint (1) allege only violations of State law; (2) do not require the disposition of any federal issue and therefore do not support *Grable* jurisdiction; (3) are not rendered removable by federal common law; (4) involve no action by Defendants taken under the direction of a federal officer, in a federal enclave, or on the Outer Continental Shelf ("OCS"); (5) do not constitute a "class action" under CAFA; and (6) make clear that the State is the real party in interest such that diversity jurisdiction is not appropriate. Defendants thus fail to meet their substantial burden of proving that removal is proper.

## II.   FACTS

The State sued Defendants in Minnesota state court, asserting claims for (1) violations of the Minnesota Consumer Fraud Act ("CFA"), Minn. Stat. § 325F.69; (2) failure to warn; (3) fraud and misrepresentation; (4) violations of the Minnesota Deceptive Trade Practices Act ("DTPA"), Minn. Stat. § 325D.44; and (5) violations of the False Statement in Advertising Act ("FSAA"), Minn. Stat. § 325F.67. Compl. ¶¶184–242. The State's claims rest on Defendants' campaign to deceive and mislead the public and consumers about the devastating impacts of climate change and its link to fossil fuels, which led to disastrous impacts caused by profligate and increased use of Defendants' products. *Id.* ¶¶2–6. Defendants have known for more than half a century

3

that their fossil-fuel products create greenhouse-gas pollution that warms the oceans, changes our climate, and causes sea levels to rise. *Id.* ¶¶3, 55–83. Despite this knowledge, Defendants funded and carried out a decades-long campaign of denial and disinformation about the existence of climate change and their products' contribution to it. *Id.* ¶¶84–131. The campaign included both a long-term pattern of direct misrepresentations and material omissions to consumers in the State and nationwide, as well as a strategy to indirectly influence consumers through the dissemination of misleading research to the press, government, and academia. *Id.*

Contrary to Defendants' assertions, this case does not seek to limit the extraction of fossil fuels or otherwise regulate greenhouse-gas emissions. Rather, the Complaint seeks damages, civil penalties, disgorgement of profits, and an order enjoining Defendants from continued violations of the CFA, DTPA, and FSAA. *Id.* ¶¶243–51.

## III.   LEGAL STANDARD

Federal courts are "courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 552 (2005) (quotation omitted). Federal courts thus "strictly . . . construe legislation permitting removal." *Dahl v. R.J. Reynolds Tobacco Co.*, 478 F.3d 965, 968 (8th Cir. 2007). "Critically, the party seeking removal has the burden to establish federal subject matter jurisdiction; all doubts about federal jurisdiction must be resolved in favor of remand." *Cent. Iowa Power Co-op v. Midwest Indep. Transmission Sys. Operator, Inc.*, 561 F.3d 904, 912 (8th Cir. 2009) (citations omitted). The presumption against removal jurisdiction is even higher in actions brought by a state exercising its sovereign authority

to enforce its own laws. *Franchise Tax Bd. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 21 n.22 (1983).

Under the cardinal "well-pleaded complaint" rule, "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar*, 482 U.S. at 392. The rule "makes the plaintiff the master of the claim," because, in drafting the complaint, the plaintiff may choose to "avoid federal jurisdiction by exclusive reliance on state law." *Id.* It is a "powerful doctrine" that "severely limits the number of cases in which state law 'creates the cause of action' that may be initiated in or removed to federal district court." *Franchise Tax Bd.*, 463 U.S. at 9–10. The State's well-pleaded Complaint does not include a federal question on its face, and "[a] defendant is not permitted to inject a federal question into an otherwise state-law claim and thereby transform the action into one arising under federal law." *Gore v. Trans World Airlines*, 210 F.3d 944, 948 (8th Cir. 2000).

A close corollary to the well-pleaded complaint rule is that "[f]ederal jurisdiction cannot be predicated on an actual or anticipated defense" based in federal law, whether anticipated by the plaintiff in the complaint, or asserted by the defendants in the notice of removal. *Vaden v. Discover Bank*, 556 U.S. 49, 60 (2009).

Defendants seek to re-write the State's Complaint in order to fit into one of two limited exceptions to the well-pleaded complaint rule—*Grable* jurisdiction and complete preemption.

## IV.   ARGUMENT

### A.   The State's claims do not fit within either narrow exception to the well-pleaded complaint rule.

The court lacks jurisdiction under 28 U.S.C. § 1331 because the State's claims are not removable under either *Grable* or the complete preemption doctrine, the only two exceptions to the well-pleaded complaint rule.

### 1.   *There is no jurisdiction under Grable because the Complaint does not "necessarily raise" any substantial, disputed federal questions.*

This case does not satisfy any of the elements required for removal jurisdiction under *Grable*, which extends federal question jurisdiction only to state-law complaints where a federal issue is: "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Martinson v. Mahube-Otwa Cmty. Action P'ship, Inc.*, 371 F. Supp. 3d 568, 571, 574 (D. Minn. 2019). "This rule applies only to a 'special and small category' of cases that present 'a nearly pure issue of law. . . .'" *Great Lakes Gas Transmission Ltd. P'ship v. Essar Steel Minn. LLC*, 843 F.3d 325, 331 (8th Cir. 2016) (quoting *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 699–700 (2006)).

"Every court to consider the question has rejected the oil-industry defendants' arguments for *Grable* jurisdiction," *Massachusetts*, 2020 WL 2769681, at *10, and this case is no different. Five district courts in four circuits have considered Defendants' *Grable* arguments in state-law cases alleging that fossil-fuel-industry defendants misrepresented their products' dangers, and all five granted remand. *See Baltimore I*, 388 F. Supp. 3d at 558–61 (rejecting assertion that "action falls within the 'special and small

6

category' of cases in which federal question jurisdiction exists over a state law claim");
*Boulder I*, 405 F. Supp. 3d at 964–68 (same); *San Mateo I*, 294 F. Supp. 3d at 937
(same); *Rhode Island*, 393 F. Supp. 3d at 150–51 (same); *Massachusetts*, 2020 WL
2769681, at *10 (same). The Ninth Circuit, in vacating the lone denial of remand based
on the relationship between climate-related injuries and federal law, also rejected *Grable*
jurisdiction. *Oakland*, 2020 WL 4678380, at *6–7. Defendants' arguments must be
rejected here, too. "On the defendants' theory, many (if not all) state tort claims that
involve the balancing of interests and are brought against federally regulated entities
would be removable. *Grable* does not sweep so broadly." *San Mateo I*, 294 F. Supp. 3d at
938.

### a.   Nothing about this case "necessarily raise[s]" any federal issue.

A federal issue is "necessarily raised" for subject-matter jurisdiction purposes only
when "the plaintiff's right to relief necessarily depends on resolution of a substantial
question of federal law." *Franchise Tax Bd.*, 463 U.S. at 28. The Eighth Circuit has
reiterated that "[t]his inquiry demands precision" and that a removing defendant "should
be able to point to the specific elements of [the plaintiff's] state law claims" that require
proof under federal law. *Cent. Iowa Power Co-op*, 561 F.3d at 914.

Here, the State brought claims under Minnesota's CFA, Compl. ¶¶184–98;
common-law theories of strict and negligent products liability, *id.* ¶¶199–211, and fraud
and misrepresentation, *id.* ¶¶212–21; Minnesota's DTPA, *id.* ¶¶222–34; and Minnesota's
FSAA, *id.* ¶¶235–42. All the rights and duties attendant to each of those theories of

liability arise entirely out of Minnesota law and do not depend on proving a violation of any federal law or federal duty.

Defendants here "have not pointed to a specific issue of federal law that must necessarily be resolved to adjudicate the [State's] claims," and instead "mostly gesture to federal law and federal concerns in a generalized way" that is insufficient to establish jurisdiction. *San Mateo I*, 294 F. Supp. 3d at 938. Every court that has ruled on Defendants' arguments concerning regulatory balancing, foreign and energy policy, federal disclosure obligations, the navigable waters of the United States, allegedly "govern[ing]" federal common law, and constitutional concerns, Not. ¶¶46–57, has squarely rejected them. *See Oakland*, 2020 WL 4678380, at *6–7, 10 n.12 (rejecting reliance on federal issues "including energy policy, national security, and foreign policy," as well as the argument that navigable waters are the "instrumentality of the alleged harm"); *Rhode Island*, 393 F. Supp. 3d at 151 ("By mentioning foreign affairs, federal regulations, and the navigable waters of the United States, Defendants seek to raise issues . . . that are not perforce presented by the State's claims."); *San Mateo I*, 294 F. Supp. 3d at 938 ("The mere potential for foreign policy implications . . . does not raise the kind of actually disputed, substantial federal issue necessary for *Grable* jurisdiction. Nor does the mere existence of a federal regulatory regime mean that these cases fall under *Grable*."); *Baltimore I*, 388 F. Supp. 3d at 559–61 (foreign affairs, regulatory balancing, navigable waters, disclosure obligations); *Boulder I*, 405 F. Supp. 3d at 965–67 (foreign affairs, regulatory balancing); *Massachusetts*, 2020 WL 2769681, at *10 ("Contrary to ExxonMobil's caricature of the complaint, the Commonwealth's allegations do not

8

require any forays into foreign relations or national energy policy."). Courts in this circuit have also granted remand and rejected analogous *Grable* arguments when considering analogous state-law claims. *See In re Dicamba Herbicides Litig.*, No. 1:18-CV-21-SNLJ, 2018 WL 2447792, at *1 (E.D. Mo. May 31, 2018) (remanding state-law labeling claims, and rejecting defendant's *Grable* arguments since compliance with *federal* pesticide labeling requirements would arise only as a preemption defense).

### b. This case does not raise a "substantial" federal issue.

Even if Defendants could show a federal question is necessarily raised, none could be considered "substantial" under *Grable*. The substantiality inquiry looks to the importance of a federal issue "to the federal system as a whole." *Gunn v. Minton*, 568 U.S. 251, 260 (2013). "An issue has such importance when it raises substantial questions as to the interpretation or validity of a federal statute, or when it challenges the functioning of a federal agency or program." *Oakland*, 2020 WL 4678380, at *5 (citation omitted). A question may also be "substantial" when it presents "a 'pure issue of law,' that directly draws into question 'the constitutional validity of an act of Congress,' or challenges the actions of a federal agency, and a ruling on the issue is 'both dispositive of the case and would be controlling in numerous other cases.'" *Id.* (citations omitted). "By contrast, a federal issue is not substantial if it is 'fact-bound and situation-specific,'" "or raises only a hypothetical question unlikely to affect interpretations of federal law in the future." *Id.* (citations omitted).

The State's claims do not challenge a federal statute or agency program, and they do not turn on a "dispositive," "pure" issue of federal law that "would be controlling" in

9

other cases. Instead, they raise only state-law issues that are highly "fact-bound and situation-specific," and any connection to future questions of federal law is "hypothetical." *See id.* at *7 (whether fossil-fuel companies can be held liable under California nuisance law "is no doubt an important policy question, but it does not raise a substantial question of federal law"); *Boulder I*, 405 F. Supp. 3d at 968 (no substantiality where "the issues raised by Defendants are not central to Plaintiffs' claims, and the claims are 'rife with legal and factual issues that are not related' to the federal issues"). Contrary to Defendants' arguments, Not. ¶58, the State's consumer-deception and failure-to-warn claims have nothing to do with energy regulations, foreign policy, or national security.[4]

### 2. There is no "complete preemption" of the State's claims.

"Complete preemption" permits federal question removal in the rare circumstance where "the pre-emptive force of a statute is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim." *Caterpillar*, 482 U.S. at 393 (quotations omitted).

Defendants do not specifically assert complete preemption in their Notice of Removal. But they do assert the State's claims: would require "reweigh[ing] the factors considered by the EPA in arriving at these standards of performance for greenhouse

---

[4] The balance of state and federal responsibility also strongly favors adjudication in state court, since the State seeks to enforce its own law in its own courts, and product defect and consumer protection claims are squarely within traditional state police authority. *See Franchise Tax Bd.*, 463 U.S. at 21 n.22 ("[C]onsiderations of comity make [courts] reluctant to snatch cases which a State has brought from the courts of that State, unless some clear rule demands it.").

gases," Not. ¶46; "conflict[] with the national position of the United States on international affairs," *id.* ¶50; would force them to "change their federally regulated methods of doing business," *id.* ¶52; would impinge on the Army Corps' "jurisdiction to regulate the navigable waters of the United States," *id.* ¶53; and would intrude on matters that "federal common law exclusively governs," *id.* ¶54. All these arguments boil down to an assertion that some rule of federal law bars the State's claims. Tellingly, Defendants' argument that to adjudicate this case "a court must answer the antecedent federal constitutional issue whether such a claim can exist under our constitutional structure," *id.* ¶57, is nothing more than an assertion that the case is barred by operation of the Supremacy Clause. However, "a suit brought upon a state statute does not arise under an act of Congress or the Constitution of the United States because prohibited thereby." *See Gully v. First Nat'l Bank*, 299 U.S. 109, 116 (1936).

As with the *Grable* exception to the well-pleaded complaint rule, Defendants' mere mention of issues such as regulatory balancing, foreign policy, federal disclosure obligations, navigable waters, federal common law, or vague constitutional concerns is insufficient to establish complete preemption of the State's consumer-protection and failure-to-warn claims.

**B.**   **Federal common law does not confer subject-matter jurisdiction over the State's claims.**

Federal common law provides no basis for removal for multiple reasons. First, and most fundamentally, the various areas of federal concern Defendants identify simply have nothing to do with the State's Complaint, which rests on traditional state-law product

11

defect and consumer-protection claims. Second, Defendants wrongly argue that the State's claims are "governed by federal common law." *E.g.*, Not. ¶32. Even if it were accurate that federal common law "governs" the State's claims—and it is not—that would merely mean federal common law *preempts* the state-law causes of action here. It is beyond dispute that ordinary preemption does not create subject-matter jurisdiction over state-law causes of action. *See Franchise Tax Bd.*, 463 U.S. at 14. Finally, Defendants misrepresent controlling precedent in asserting that the federal common law of interstate nuisance "governs" or preempts every state-law case involving climate change. The opposite is true. To the extent such federal common law ever existed with respect to air pollution, the Supreme Court has expressly stated that it has been displaced by the Clean Air Act ("CAA"), and "the availability *vel non* of a state lawsuit depends, *inter alia*, on the preemptive effect of the federal [CAA]." *Am. Elec. Power Co., Inc. v. Connecticut*, 564 U.S. 410, 429 (2011) ("*AEP*").

Ultimately, "only limited areas exist in which federal judges may appropriately craft the rule of decision," which historically "have included admiralty disputes and certain controversies between States." *Rodriguez v. Fed. Deposit Ins. Corp.*, 140 S. Ct. 713, 717 (2020). Moreover, "[i]n the absence of congressional authorization, [federal] common lawmaking must be 'necessary to protect uniquely federal interests.'" *Id.* There are no "uniquely federal interests" at stake in the State's action to enforce the State's consumer-protection and defective-products laws against these Defendants. Federal common law does not apply here.

### 1.   *Federal common law cannot provide an independent basis for removal.*

The State's claims do not arise under federal common law because the two relevant exceptions to the well-pleaded complaint rule (*Grable* and complete preemption) are not satisfied, and there is no other avenue for subject-matter jurisdiction based on federal common law. Defendants "fail to cite any Supreme Court or other controlling authority authorizing removal based on state-law claims implicating federal common law," because there is none.[5] *Boulder I*, 405 F. Supp. 3d at 963.

Defendants do not specify how federal common law would convert the State's Minnesota-law causes of action into federal ones, stating only that it "governs." Not. ¶¶23, 28, 32–33. But Defendants' insistence that federal common law "governs," is a euphemism to disguise their argument that federal common law preempts the State's claims. Ordinary federal preemption cannot create subject-matter jurisdiction, and one appellate court and four district courts have rejected identical arguments in substantially similar climate impact cases for that reason. *See Oakland*, 2020 WL 4678380, at *4; *Baltimore I*, 388 F. Supp. 3d at 555; *Boulder I*, 405 F. Supp. 3d at 963-64; *Rhode Island*, 393 F. Supp. 3d at 148-49; *Massachusetts*, 2020 WL 2769681, at *7.

In *Oakland*, the Ninth Circuit expressly rejected an identical argument. 2020 WL 4678380, at *3. Defendants' assertion that the Ninth Circuit "reversed on other grounds,"

---

[5] Defendants rely on *City of New York v. BP P.L.C.*, 325 F. Supp. 3d 466 (S.D.N.Y. 2018), Not. ¶30, but in that case the court did not consider whether federal common law conferred federal question jurisdiction because the plaintiff originally filed its complaint in federal court based on diversity jurisdiction.

Not. ¶30 n.10, is misleading. The court rejected the district court's conclusion "that it had federal-question jurisdiction under 28 U.S.C. § 1331 because the [plaintiffs]' claim was 'necessarily governed by federal common law,'" *Oakland*, 2020 WL 4678380, at *3, holding that "because neither exception to the well-pleaded-complaint rule [*Grable* jurisdiction or complete preemption] applies to the [plaintiffs]' original complaints, the district court erred in holding that it had jurisdiction," *id.* at *8. The court did not analyze the plaintiffs' complaints under a third exception for state-law claims "governed by" federal common law because there is no such exception.

## 2.    *This case has nothing to do with any body of federal common law.*

The Complaint also cannot be removed based on some relationship with federal common law because this case simply has no relationship to "transboundary pollution," Not. ¶¶24–32, "'interstate or navigable waters' of the United States," *id.* ¶¶33–34, "foreign commerce and the foreign affairs of the United States," *id.* ¶¶35–41, or any other purported uniquely federal interest.

The Ninth Circuit in *Oakland* rejected this as a ground for removal as well. As here, the Defendants argued in *Oakland* that the plaintiffs' claim "implicates a variety of 'federal interests,' including energy policy, national security, and foreign policy." 2020 WL 4678380, at *7. The Ninth Circuit found these arguments did not justify removal since they "d[id] not raise a substantial question of federal law for the purpose of determining whether there is jurisdiction under § 1331." *Id.*

Likewise, in *Massachusetts*, the court remanded a consumer-protection action brought by that state's Attorney General, declining to find jurisdiction based on a

purported relationship to federal common law because the state's claims were simply unrelated to any uniquely federal concerns:

> [T]he Commonwealth wants "to hold ExxonMobil accountable for misleading the state's investors and consumers." . . . No one doubts that this task falls within the core of a state's responsibility. . . . States routinely enforce consumer protection and securities laws alongside the federal government. Nor has ExxonMobil provided any reason why protecting Massachusetts consumers and investors from fraud implicates "uniquely federal interests." It does not.

2020 WL 2769681, at *9 (citations omitted).

The same analysis and result apply here. The State's claims seek to ensure that "the parties who have profited from avoiding the consequences and costs of dealing with global warming and its physical, environmental, social, and economic consequences, bear the costs of those impacts," Compl. ¶7, not to regulate emissions or solve the countless environmental problems stemming from climate change. There is no basis to presume that Congress intended to subsume state statutory consumer-protection claims or common-law product-liability claims into judge-made federal law concerning interstate pollution, federal waterways, or foreign policy.

### 3. *The federal common law Defendants point to is irrelevant to the State's claims.*

Moreover, the federal common law Defendants rely on is irrelevant to this case because it pertains to emissions-related nuisance claims and not consumer-protection or failure-to-warn actions. The federal common law of public nuisance that might apply to interstate air pollution simply cannot confer federal jurisdiction on state consumer

15

protection and consumer fraud claims that apply to corporate actors' marketing and deceptive trade practices.

Moreover, the CAA has displaced whatever federal common law was once related to greenhouse-gas emissions, and the Supreme Court and Ninth Circuit have rejected Defendants' assertion that federal common law "governs" every state-law claim that touches on global warming. *AEP*, 564 U.S. at 429;[6] *Oakland*, 2020 WL 4678380, at *6 ("[T]he Supreme Court has not yet determined that there *is* a federal common law of public nuisance relating to interstate pollution," because "*federal* public-nuisance claims aimed at imposing liability on energy producers" for climate crisis injuries "are displaced by the Clean Air Act.") (emphases added).

---

[6] Defendants entirely misrepresent *AEP* and *Native Village of Kivalina v. ExxonMobil Corp.*, 696 F.3d 849 (9th Cir. 2012). In *AEP*, plaintiffs sued five electric power companies in federal court, alleging the companies' greenhouse gas emissions violated the federal common law of interstate nuisance or, in the alternative, state tort law. 564 U.S. at 418. The Supreme Court disagreed, holding that "the Clean Air Act and the EPA actions it authorizes displace any federal common-law right to seek abatement of carbon-dioxide emissions from fossil-fuel fired powerplants" because it was "plain that the Act 'speaks directly' to emissions of carbon dioxide from the defendants' plants." *Id.* at 424. It was thus an "academic question whether, in the absence of the [CAA], the plaintiffs could state a federal common-law claim for curtailment of greenhouse gas emissions because of their contribution to global warming"; if ever such a cause of action existed, it did not survive the CAA. *Id.* at 423. The Court expressly reserved the question of whether the plaintiffs' *state* nuisance claims remained viable, "leav[ing] the matter open for consideration on remand." *Id.* at 429; *see San Mateo I*, 294 F. Supp. 3d at 937 ("Far from holding (as the defendants bravely assert) that state-law claims relating to global warming are superseded by federal common law, the Supreme Court noted that the question of whether such state-law claims survived would depend on whether they are preempted by the federal statute that had displaced federal common law (a question the Court did not resolve).").

Accordingly, Defendants' reliance on the federal common law of "transboundary air pollution" fails for two independent reasons: first, that common law is irrelevant to the State's consumer protection and product defect claims; second, to the extent such common law even ever existed, it was displaced by the CAA, and therefore cannot provide a basis for removal. *San Mateo I*, 294 F. Supp. 3d at 937 ("Simply put, th[is] cas[e] should not have been removed to federal court on the basis of federal common law that no longer exists.").

### C.  The Complaint does not implicate federal enclaves, the OCS, or federal officers; jurisdiction on these bases is inappropriate.

In an effort to create a case that might be properly heard in federal court, Defendants rewrite the State's Complaint into something unrecognizable. Defendants do not claim (nor could they) that the climate disinformation campaign described by the Complaint occurred on federal enclaves, involved the OCS, or was conducted at the direction of federal officers. Instead, they cast the Complaint as something it is not—an attempt to end all fossil-fuel production and sales. *See*, *e.g.*, Not. ¶¶63, 71, 103–04. Rather, the State is seeking recovery for the harms it has suffered due to Defendants' deliberate disinformation campaign, a campaign that is not alleged to have been conducted on the property of, or at the direction of, the federal government.

#### 1.  *The State is not seeking to recover for injuries that occurred on federal enclaves.*

While it is true that federal courts have jurisdiction over claims that "arise on" federal property, *Leslie v. Maida Eng'g Inc.*, No. 4:13-cv-614 (CEJ), 2013 WL 2403849, at *2 (E.D. Mo. May 31, 2013), here, the Complaint expressly disclaims injuries to any

17

federal property in Minnesota, Compl. ¶9 n.4. Where a plaintiff makes such a disclaimer, courts routinely grant motions to remand. *See, e.g.*, *Baltimore I*, 388 F. Supp. 3d at 565; *Boulder I*, 405 F. Supp. 3d at 974; *Rhode Island*, 393 F. Supp. 3d at 152; *Washington v. Monsanto Co.*, 274 F. Supp. 3d 1125, 1132 (W.D. Wash. 2017); *Goto v. Whelan*, No. 20-cv-01114 (HSG), 2020 WL 4590596, at *4 (N.D. Cal. Aug. 11, 2020). As the *Boulder I* court held:

> It is not the defendant's conduct, but the injury, that matters. . . . Federal enclave jurisdiction thus does not exist here because Plaintiffs' claims and injuries are alleged to have arisen exclusively on non-federal land. That . . . Defendants may have caused similar injuries to federal property . . . does not provide a basis for removal.

405 F. Supp. 3d at 974 (citations omitted). Defendants' vague assertion that the Complaint "necessarily sweeps in" activities on federal enclaves or impacts them is insufficient to establish jurisdiction.[7] Not. ¶63–64. Additionally, even if some portion of Defendants' *tortious conduct* occurred on federal land, for the purposes of assessing federal enclave jurisdiction, courts consider the "locus" in which the claim arose and "where the 'substance and consummation' of events given rise to claims occur." *Coleman v. Trans Bay Cable, LLC*, No. 19-CV-02825-YGR, 2019 WL 3817822, at *3 (N.D. Cal. Aug. 14, 2019). Here, the locus of the claim is where the State was injured, namely on non-federal land and when Minnesota consumers were misled within Minnesota.

---

[7] Defendants' cited cases are inapplicable. *See* Not. ¶63. Neither analyzed the location in which a state law tort cause of action arises for enclave jurisdiction purposes—let alone whether injuries exclusively sustained on non-federal land could be subject to enclave jurisdiction.

Even if it were Defendants' conduct that could give rise to federal enclave jurisdiction rather than the State's injuries, the only conduct Defendants even attempt to relate to a specific federal enclave is activity in the District of Columbia ("D.C."). Defendants' assertion that federal enclave jurisdiction applies because "the Complaint relies upon conduct occurring in [D.C.]," itself a federal enclave, Not. ¶65, was soundly rejected in *Baltimore I*, 388 F. Supp. 3d at 565 ("That a claim is based on conduct that occurred in [D.C.], therefore, does not *ipso facto* make it a federal claim over which federal question jurisdiction lies. Rather, it must arise under federal law. . . .").

Defendants' single citation, which only supports the proposition that D.C. is a federal enclave, does not compel a different result here.[8] Not. ¶65. Moreover, "courts have only found that claims arise on federal enclaves, and thus fall within federal question jurisdiction, when all or most of the pertinent events occurred there." *Baltimore I*, 388 F. Supp. 3d at 565 (collecting cases). Here, the State seeks relief for pertinent events occurring in Minnesota: misrepresentations and omissions made to consumers in Minnesota, as well as Defendants' failure to warn consumers in Minnesota, which resulted in injuries in Minnesota. Compl. ¶¶139–83. The Court should reject Defendants' mischaracterization of the well-pleaded Complaint.

---

[8] Nor does Defendants' irrelevant and incorrect claim that the State infringes on their First Amendment rights. "The States . . . are free to prevent the dissemination of commercial speech that is false, deceptive, or misleading." *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626, 638 (1985).

19

### 2. The State's Complaint does not fall within the jurisdictional grant of the Outer Continental Shelf Lands Act.

Nor is the State's case subject to federal jurisdiction pursuant to OCSLA, 43 U.S.C. § 1349(b)(1). The Fifth Circuit summarized the test for OCSLA jurisdiction as follows:

> Courts typically assess jurisdiction under [§ 1349] in terms of whether (1) the activities that caused the injury constituted an "operation" "conducted on the Outer Continental Shelf" ["OCS"] that involved the exploration and production of minerals, and (2) the case "arises out of, or in connection with" the operation.

*In re Deepwater Horizon*, 745 F.3d 157, 163 (5th Cir. 2014). "[T]he term 'operation' contemplate[s] the doing of some physical act on the [OCS]." *EP Operating Ltd. P'ship v. Placid Oil Co.*, 26 F.3d 563, 567 (5th Cir. 1994) ("*EP*"). The Complaint does not allege that any of Defendants' misrepresentations, omissions, or failures to warn occurred on the OCS.

Every court to consider Defendants' OCSLA arguments in substantially similar climate impacts cases has rejected them. *See Boulder I*, 405 F. Supp. 3d at 978–79; *Rhode Island*, 393 F. Supp. 3d at 151–52; *Baltimore I*, 388 F. Supp. 3d at 566–67; *San Mateo I*, 294 F. Supp. 3d at 938–39. As the *Boulder I* court found: "jurisdiction under OCSLA makes little sense for injuries in a landlocked state that are alleged to be caused by conduct that is not specifically related to the OCS. No court has read OCSLA so expansively." 405 F. Supp. 3d at 979. Under any conception of the jurisdictional test, the State's injuries here were not caused by, do not arise from, and do not interfere with physical "operations" on the OCS. To find that OCSLA grants jurisdiction here would

20

mean that any injury involving gasoline sourced from some fraction of OCS oil could be removed to federal court.[9] Neither the statute nor case law allows for such an absurd result.

### 3. There is no federal officer removal jurisdiction because no federal officer directed the Defendants' actions at issue in this case.

Defendants' invocation of the federal officer removal statute, 28 U.S.C. § 1442, likewise does not support federal jurisdiction because (1) there is no plausible connection between the State's claims and the activities described in the Notice of Removal; and (2) Defendants have not shown they "acted under" federal officers.

The federal officer removal statute permits removal only if the defendant, "in carrying out the 'act[s]' that are the subject of the petitioner's complaint, was 'acting under' any 'agency' or 'officer' of 'the United States.'" *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007). "Four elements are required for removal under § 1442(a)(1): (1) a defendant has acted under the direction of a federal officer, (2) there was a causal connection between the defendant's actions and the official authority, (3) the defendant has a colorable federal defense to the plaintiff's claims, and (4) the defendant is a 'person,' within the meaning of the statute." *Jacks v. Meridian Res. Co.*, 701 F.3d 1224, 1230 (8th Cir. 2012). Here, Defendants assert they acted under federal officers by producing special fuel for the military, developing oil and gas under federal leases

---

[9] Defendants' cited cases are inapposite, as they each involve injuries caused by physical activity on the OCS related to fossil fuel extraction, or contract disputes directly concerning those activities. *See* Not. ¶¶99–107 (citing cases).

governed by OCSLA, and producing oil and operating infrastructure for the Strategic Petroleum Reserve. Not. ¶¶72–92. But Defendants cannot show even a tenuous connection, much less a causal one, between these activities and the State's consumer protection Complaint, which addresses wholly different conduct.

Defendants rewrite the Complaint as seeking to end all fossil-fuel production and then posit that their leasing of federal lands for exploration, drilling, and production of fossil fuels, along with certain contracts to sell certain fuels to the federal government, renders them federal officers entitled to this Court's jurisdiction. But this case does *not* seek "to limit and ultimately end Defendants' production of fossil fuels." Not. ¶3. Moreover, the Complaint expressly disclaims any injuries arising "from Defendants' provision of fossil fuel products to the federal government for military and national defense purposes." Compl. ¶9 n.4.

In *Baltimore II*, the Fourth Circuit rejected defendants' mischaracterization of substantially similar claims and allegations:

> When read as a whole, the Complaint clearly seeks to challenge the promotion and sale of fossil fuel products without warning and abetted by a sophisticated disinformation campaign. Of course, there are many references to fossil fuel production in the Complaint, which spans 132 pages. But, by and large, these references . . . [are] not the source of tort liability. Put differently, Baltimore does not merely allege that Defendants contributed to climate change and its attendant harms by producing and selling fossil fuel products; it is the concealment and misrepresentation of the products' known dangers—and simultaneous promotion of their unrestrained use—that allegedly drove consumption, and thus greenhouse gas pollution, and thus climate change.

952 F.3d at 467; *accord San Mateo II*, 960 F.3d at 600–03; *Boulder II*, 965 F.3d at 819–27. Faced with similar arguments, the *Rhode Island* and *Massachusetts* courts reached the

22

same conclusion. *Rhode Island*, 393 F. Supp. 3d at 152 ("Defendants cannot show the alleged promotion and sale of fossil fuels abetted by a sophisticated misinformation campaign were 'justified by [their] federal duty.'"); *Massachusetts*, 2020 WL 2769681, at *12 (finding ExxonMobil's false and deceptive marketing and sales tactics "were not plausibly 'relat[ed]' to the drilling and production activities supposedly done under the direction of the federal government").

The result is no different here. The conduct at issue is Defendants' campaign of deception and failure to warn, and Defendants' attempt to convince the Court otherwise in the Notice of Removal is an elaborate misdirection. The State's Complaint does not challenge Defendants' drilling activities or their development of oil and gas on federal lands, nor does it seek relief to stop or reduce Defendants' production or sale of those fossil-fuel products, including to the federal government. *See* Not. ¶¶70–95. The State is not even seeking redress for injuries arising from fuel sales to the federal government for military and national defense purposes. Compl. ¶9 n.4. In any event, most of the military fuel sales described in the Notice of Removal occurred during World War II and the Korean War, Not. ¶¶71–76, and Plaintiff has not alleged any misconduct during this period. *See Ryan v. Dow Chem. Co.*, 781 F. Supp. 934, 946 (E.D.N.Y. 1992) ("Critical under the [federal officer removal] statute is 'to what extent defendants acted under federal direction' at the time they were engaged in the conduct now being sued upon.").[10]

---

[10] Even if Defendants' fuel sales to the military, *see* Not. ¶77, could be considered (they cannot, Compl. ¶9 n.4), Defendants' sales during the relevant period constitute arms-length commercial transactions for off-the-shelf products that cannot possibly give

23

Moreover, courts, including this one, routinely reject federal jurisdiction in cases involving failure to warn or deceptive marketing, particularly where, as here, there is no assertion that the government exercised control over the challenged misrepresentations. *See, e.g., In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 428 F. Supp. 2d 1014, 1016–18 (D. Minn. 2006) (remanding defective design case where FDA did not exercise control over design, manufacture, or sale of the defibrillators at issue); *In re MTBE Prods. Liab. Litig.*, 488 F.3d 112, 131–32 (2d Cir. 2007) (holding federal officer removal improper where federal regulations "say nothing" about marketing and other tortious conduct); *Meyers v. Chesterton*, No. CIV.A 15-292, 2015 WL 2452346, at *6–7 (E.D. La. May 20, 2015) (rejecting federal officer removal because "nothing about the Navy's oversight prevented the Defendants from complying with any state law duty to warn"), *vacated as moot Meyers v. CBS Corp.*, No. 15-30528, 2015 WL 13504685 (5th Cir. Oct. 28, 2015); *Faulk v. Owens-Corning Fiberglass Corp.*, 48 F. Supp. 2d 653, 662 (E.D. Tex. 1999) (remanding case where defendant failed to "tether" production of avgas for military to plaintiff's claims for failure to warn about asbestos).

Defendants have also failed to meet their separate burden to establish they were "acting under" a federal officer. To meet this burden, defendants must establish both that they were "involve[d in] an effort to *assist*, or to help *carry out*, the duties or tasks of [a]

---

rise to jurisdiction. *See Baltimore II*, 952 F.3d at 465 (holding arms-length commercial transactions insufficient to warrant removal under § 1442). Defendants assert that they have sold jet fuel to the military pursuant to military specifications. Not. ¶77. But these specifications did not prevent Defendants from complying with any of the state law duties at issue, including their duty to warn.

federal superior" and that their relationship with the federal superior "involve[d] 'subjection, guidance, or control.'" *Watson*, 551 U.S. at 151–52. Here, Defendants assert that they acted under a federal superior when mining the OCS for fossil fuels under government leases, Not. ¶¶79–90, or as operators and lessees of Strategic Petroleum Reserve infrastructure, Not. ¶¶91–92. Every court that has heard substantially similar arguments has rejected them. *See, e.g.*, *Baltimore II*, 952 F.3d at 463, 465, 468–71; *San Mateo II*, 960 F.3d at 600–03; *Boulder II*, 965 F.3d at 820–27. These arguments fail since "'[t]he willingness to lease federal property or mineral rights to a private entity for the entity's own commercial purposes, without more' cannot be 'characterized as the type of assistance that is required' to show that the private entity is 'acting under' a federal officer." *San Mateo II*, 960 F.3d at 603 (quoting *Baltimore II*, 952 F.3d at 465).[11]

### D.   The Class Action Fairness Act does not provide a basis for removal because this is not a "class action."

Defendants next assert that CAFA, 28 U.S.C. § 1332(d), supplies a basis for removal—even though this is not a class action. Defendants claim CAFA applies because the Complaint alleges harms to state residents and consumers. Not. ¶115. But every court to have addressed this issue in an analogous context has concluded that CAFA does not apply to *parens patriae* actions like this one, brought by a state under the common law or

---

[11] The court also lacks subject matter jurisdiction under 28 U.S.C. § 1442 because Defendants do not have a colorable federal defense. Defendants' vague reference to a litany of defenses, without any explanation as to why those defenses apply, Not. ¶96, does not suffice to satisfy their burden under § 1442. *Graves v. 3M Co.*, Civ. No. 19-3094 (JRT/KMM), 2020 WL 1333135, at *6 n.8 (D. Minn. Mar. 23, 2020) ("[Defendant] has the burden to demonstrate a colorable federal defense.").

its own consumer-protection laws. *See, e.g.*, *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 212–20 (2d Cir. 2013); *LG Display Co. v. Madigan*, 665 F.3d 768, 770–72 (7th Cir. 2011); *Washington v. Chimei Innolux Corp.*, 659 F.3d 842, 848–49 (9th Cir. 2011); *W. Va. ex rel. McGraw v. CVS Pharmacy, Inc.*, 646 F.3d 169, 174–78 (4th Cir. 2011); *Mississippi ex rel. Hood v. AU Optronics Corp.*, 701 F.3d 796, 799 (5th Cir. 2012), *rev'd on other grounds*, 571 U.S. 161 (2014).[12] Consistent with this precedent, the *Massachusetts* court rejected an identical argument, raised by ExxonMobil, in a similar climate impact case brought by that state's attorney general. 2020 WL 2769681, at *15. This Court should do the same.

Federal jurisdiction pursuant to CAFA is narrow. It confers federal jurisdiction only over specific actions—those that qualify as a "class action" or "mass action"—and that satisfy particular requirements. *See, e.g.*, *Purdue Pharma*, 704 F.3d at 213; 28 U.S.C. § 1332(d)(1)–(2); 28 U.S.C. § 1453(b). Under CAFA, a "class action" is "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). An action that does not qualify as a

---

[12] Defendants' reliance on *Williams v. Employers Mutual Casualty Co*., 845 F.3d 891 (8th Cir. 2017) is misplaced, as that case involved a certified class action. In *Williams*, a class representative brought an equitable garnishment action against a mobile home park and its insurers, after obtaining a class action judgment against the mobile home park. *Id.* at 894–95. The court held the garnishment action constituted a class action for the purposes of CAFA removal, as the only basis for allowing the class representative to bring the action on behalf of the class was the previously certified class action. *Id.* at 901. The same does not hold true for this *parens patriae* action.

26

"class action" is not subject to CAFA, "regardless whether they meet the other prerequisites of numerosity, minimal diversity, and amount in controversy." *Purdue Pharma*, 704 F.3d at 214.

This action was not brought under Rule 23 or a "similar State statute or rule of judicial procedure," and thus is not a "class action" as defined by CAFA. Defendants nevertheless assert the Court should consider this *parens patriae* action a "class action" because: the Attorney General brought the action "on behalf of all Minnesota residents and '[f]ossil-fuel consumers,'" Not. ¶115; the action seeks restitution, *id*. (citing Compl. ¶248); and the State has alleged that Defendants should bear the costs of climate change rather than Minnesota's consumers and residents, *id*. But in the absence of a statute "similar" to Rule 23, the fact that the Attorney General acts in the public interest does not transform a *parens patriae* action into a class action. *Purdue Pharma*, 704 F.3d at 217.

A state has standing to sue as *parens patriae* where it can articulate an interest "apart from the interests of private parties," such as "'the health and well-being—both physical and economic—of its residents in general.'" *LG Display Co.*, 665 F.3d at 771. In contrast, a class action is brought on behalf of a discrete group of identifiable individuals. *See id.* Here, the Attorney General has brought this suit "as a *parens patriae* suit," on behalf of State residents and consumers in general, not on behalf of a class of particular individuals of whom the Attorney General is a typical representative. *See id.* at 771–72. Although the Attorney General has brought this case in the public interest and has sought, *inter alia*, restitution and damages from Defendants, in other key respects this case lacks

27

the "fundamental attributes of a consumer class action filed by a private party." *Washington*, 659 F.3d at 848.

### E. Diversity jurisdiction cannot be premised on indirect benefits to Minnesota citizens because the State is the real party in interest.

"There is no question that a State is not a 'citizen' for purposes of . . . diversity jurisdiction." *Moor v. Alameda Cty.*, 411 U.S. 693, 717 (1973). Defendants seek to avoid this binding authority by arguing the State's presence in this action is purely nominal and that Minnesota residents—not the State—are the real parties in interest. Not so.

"A real party in interest is the person who, under governing substantive law, is entitled to enforce the right asserted." *Cascades Dev. of Minn., LLC v. Nat'l Specialty Ins.*, 675 F.3d 1095, 1098 (8th Cir. 2012) (internal quotations omitted). The Attorney General is entitled to enforce the rights asserted in this Complaint, and therefore the State, acting through the Attorney General, is the real party in interest. *See* Minn. Stat. § 8.31. Indeed, *only* the Attorney General—not individual consumers—may recover the civil penalties sought here. *See* Compl. ¶247; *compare* Minn. Stat. § 8.31(3) *with* Minn. Stat. § 8.31(3)(a); *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 671–72 (9th Cir. 2012) (finding state was real party in interest because it had statutory authority to bring claims, sovereign interest in enforcement of its consumer fraud laws, and sought relief available to it alone).

Additionally, contrary to Defendants' assertions, a state's interest in a lawsuit is in fact real when the state acts in its *parens patriae* capacity "as the representative of its citizens in original actions where the injury alleged affects the general population of a

State in a substantial way." *Maryland v. Louisiana*, 451 U.S. 725, 737 (1981).[13] Where the state challenges a practice that affects a "substantial portion" of its population, the state has "an interest apart from that of the individuals affected . . . which is immediate and recognized by law." *See id.* at 738.

Here, the State brings consumer protection and failure to warn claims under its statutory and *parens patriae* authority for injuries and practices that affect the general population of Minnesota in a substantial way: deceptive and misleading advertisements regarding Defendants' products and harmful climate change impacts. Compl. ¶¶12, 139–83, 188 (describing injuries). The State seeks injunctive relief, disclosure of Defendants' research related to climate change, the funding of "a corrective public education campaign in Minnesota relating to the issue of climate change," and penalties, in addition to restitution. *Id.* ¶¶243–48. The State's sovereign interest in protecting its residents and infrastructure from Defendants' deceptive trade practices and failure to warn "is not diminished merely because it has tacked on a claim for restitution." *Nevada,* 672 F.3d at 671. Defendants have failed to show the real parties in interest here are the residents of the State and not the State itself. *See, e.g.*, *State v. City of Dover*, 891 A.2d 524, 529 (N.H. 2006) (holding State had *parens patriae* standing to bring products liability action

---

[13] *New York v. Gutierrez*, No. 08-CV-2503-CPS-RLM, 2008 WL 5000493 (E.D.N.Y. Nov. 20, 2008) is inapposite. In that case, the court found that citizen intervenors' filing of a complaint related back because the intervenors were the real party in interest that the state sought to protect—not that a state bringing consumer fraud claims is not a real party in interest. *Id.* at *13.

against manufacturers of contaminant because it had quasi-sovereign interest in protecting the health and well-being of its residents).

## V.   CONCLUSION

For the foregoing reasons, the State requests that this Court remand the Complaint to the Ramsey County District Court, Second Judicial District of Minnesota. Moreover, pursuant to 28 U.S.C. § 1447(c), the State respectfully requests that the Court award just costs and actual expenses, including attorney's fees, incurred by the State as a result of Defendants' improper removal, or in the alternative, that the State be permitted to brief this issue further. An award of fees is warranted since Defendants' removal was objectively unreasonable, as demonstrated by the unanimous opinions of district and appellate courts across the country rejecting subject matter jurisdiction in substantially similar circumstances. *See Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).

Dated:  September 10, 2020          Respectfully submitted,

KEITH ELLISON
Attorney General
State of Minnesota

*/s/ Leigh Currie*
LIZ KRAMER
Solicitor General
Atty. Reg. No. 0325089

OLIVER LARSON
Assistant Attorney General
Atty. Reg. No. 0392946

LEIGH CURRIE
Special Assistant Attorney General
Atty. Reg. No. 0353218

445 Minnesota Street, Suite 1400
St. Paul, Minnesota 55101-2131
(651) 757-1010
(651) 297-4139 (Fax)
liz.kramer@ag.state.mn.us
oliver.larson@ag.state.mn.us
leigh.currie@ag.state.mn.us

ATTORNEYS FOR STATE OF
MINNESOTA